# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| ALAN DALE BARTLEY, ) | |
|     Plaintiff ) | Civil Action No.: 7:16cv00224 |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| E. WALK, ) | |
|     Defendant, ) | |

       The plaintiff, Alan Dale Bartley, ("Bartley"), an inmate incarcerated at Keen Mountain Correctional Center, ("Keen Mountain"), filed this civil rights action pro se pursuant to 42 U.S.C. § 1983 against E. Walk, a Keen Mountain correctional officer. Bartley alleges that Walk either used excessive force on him while he was experiencing an epileptic seizure on June 1, 2014, or failed to intervene as others used excessive force on him. He also claims that Walk was deliberately indifferent to his need for medical care. Bartley also asserts a state law assault and battery claim against Walk. This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) to conduct an evidentiary hearing and render a report and recommended finding as to the defendant's defense that Bartley's claims are barred by his failure to exhaust his administrative remedies as stated in Walk's Motion For Summary Judgment, ("Motion"), (Docket Item No. 15). An evidentiary hearing was held before the undersigned on August 22, 2017.

## *I. Facts*

       In his Complaint, Bartley alleges that on June 1, 2014, while he was experiencing an epileptic seizure, Correctional Officer Walk found him

unresponsive. When Bartley failed to respond to Walk's orders, Walk called for a cell extraction team to remove Bartley from his cell. Bartley claims that during the cell extraction, his left shoulder was severely injured by the use of excessive force by the extraction team and Walk. Bartley also claims that Walk failed to intervene to prevent the cell extraction team from using excessive force and that Walk was deliberately indifferent to his serious medical needs. Bartley previously filed a Verified Statement stating that he had exhausted his administrative remedies as to each of his claims raised in his Complaint; however, he did not attach any documentation showing how he had exhausted. (Docket Item No. 2.)

Walk has provided three affidavits as support for his Motion. In his affidavit, Walk stated that he noticed Bartley lying unresponsive on the floor of his cell on June 1, 2014. (Docket Item No. 16-1.) Bartley stated that he notified Keen Mountain's Medical Department and the Watch Commander. Captain Lee and Nurse Lester responded to Bartley's cell. Walk stated that, as Nurse Lester began checking Bartley, Bartley slapped at her. Walk stated that he and Lee then brought Bartley to his feet and placed restraints on him. Bartley was then escorted to the Special Housing Unit.

Walk stated that he placed an institutional disciplinary charge against Bartley for Disobeying an Order because Bartley had been unresponsive when Walk gave him three direct orders to stand and be restrained. According to Walk, Bartley accepted the penalty offer and was fined $6.00. Walk also charged Bartley with Delaying/Hindering an Employee in the Performance of Their Duties, but he said that charge was dismissed as duplicative. Walk stated that an extraction team was not used on Bartley on June 1, 2014, and that he did not use any excessive force on Bartley.

Walk attached a copy of Bartley's Disciplinary Offense Report to his affidavit. This report states, in part: "On 06/01/2010 at 1:25 p.m.…. A. Bartley … did disobey a direct order by laying in the floor of his cell pretending to be unresponsive. I[,] …E. Walk gave Inmate A. Bartley 3 direct orders to stand up and be restrained and Inmate A. Bartley made no response." While this form shows that Bartley did not initially accept the penalty offer, it states that he appeared at his disciplinary hearing and pleaded guilty and accepted the penalty offer. Bartley was fined $6.00.

Walk also has provided the court with an affidavit from J. D. Webb, the Grievance Coordinator at Keen Mountain. (Docket Item No. 16-2) ("Webb Affidavit"). In this affidavit, Webb stated that the Offender Grievance Procedure, set out in Operating Procedure, ("OP"), 866.1, provides the mechanism by which offenders are to resolve complaints, appeal administrative decisions and challenge the substance of procedures. (Webb Affidavit at 2.) Each offender is entitled to use the grievance procedure for problem resolution, and reprisals are not imposed upon offenders for filing grievances in good faith. (Webb Affidavit at 2.) Grievances are to be submitted within 30 calendar days from the date of the incident at issue. (Webb Affidavit at 3.) However, prior to submitting a regular grievance, the offender must demonstrate that he has made a good faith effort to informally resolve his complaint, which he may do by submitting an informal complaint form to the appropriate department head. (Webb Affidavit at 3.) Prison staff should respond to the offender's informal complaint within 15 calendar days to ensure that the informal response is provided prior to the expiration of the 30-day time period in which an offender may file his regular grievance. (Webb Affidavit at 3.) When filing a regular grievance, the offender must attach any required documentation regarding his attempt to informally resolve the issue. (Webb Affidavit at 3-4.)

If a regular grievance is accepted during the intake process, there are three levels of review available. (Webb Affidavit at 4.) Level I reviews are conducted by the Warden or Superintendent of the prison. (Webb Affidavit at 4.) If the offender is dissatisfied with the determination, he may appeal to Level II. (Webb Affidavit at 4.) Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services or Superintendent for Education. (Webb Affidavit at 4.) For most issues, Level II is the final level of review. (Webb Affidavit at 4.) For those issues appealable to Level III, the Chief of Corrections Operations or Director of the VDOC conducts a review of the regular grievance. (Webb Affidavit at 4.) The time limit for issuing a Level I response is 30 days, 20 days for a Level II response and 20 days for a Level III response. (Webb Affidavit at 4.) Expiration of the time limit without issuance of a response at any stage of the process automatically qualifies the grievance for appeal. (Webb Affidavit at 4.) Grievances must be appealed through all available levels of review to satisfy the exhaustion requirement before filing a lawsuit. (Webb Affidavit at 5.)

According to Webb, offenders are oriented to the Offender Grievance Procedure when they are initially received into VDOC custody, as well as each time they are transferred to a different facility. (Webb Affidavit at 5.) Webb stated that Bartley has utilized the grievance procedure on several occasions during his confinement, but he has not submitted any grievance regarding the complaints raised in this lawsuit. (Webb Affidavit at 5.)

Walk also has provided an affidavit from Eugene Whited, a registered nurse and the Health Authority at Keen Mountain. (Docket Item No. 16-3.) According to Whited, he has reviewed Bartley's VDOC medical records, and Bartley is not

epileptic. He stated that Bartley was seen by a nurse on June 1, 2014, for "unresponsiveness" with no other complaints. Whited said that Bartley was seen again at sick call on June 2, 2014, for complaints of dizziness with no other complaint noted. Bartley was seen by a physician for dizziness on June 5, 2014, with no other difficulties observed. On July 4 and 5, 2014, Bartley complained of left shoulder pain. He denied any fall or injury. He was transported to outside medical facilities for further medical treatment. While assigned to the infirmary at Powhatan Correctional Center on July 8, 2014, Bartley claimed that he blacked out while returning to his cell from chow and woke up in pain. On July 15, 2014, Bartley reported to a physician at Keen Mountain that "I don't know how I did this. I'm not sure." Copies of Bartley's medical records were attached to Whited's affidavit.

In a response to the Motion, Bartley stated that informal complaint forms must be obtained from sergeants or higher-ranking officers at Keen Mountain. (Docket Item No. 18.) He said that offenders must explain their complaint to an officer and then wait and see if the officer will bring them an informal complaint form to complete. Bartley also stated that he failed to exhaust his administrative remedies based on "fear of threat and intimidation and physical harm which had already been inflicted once before maliciously and willfully. The plaintiff was in fear for his life." Bartley also has provided copies of medical reports from the VCU Health System, MCV Hospitals & Physicians showing that he was prescribed Depakote ER 500 mg tablets on August 14, 2014, for seizure activity. (Docket Item No. 18 at 13-15.)

At the August 22 evidentiary hearing, Bartley testified that he had no recollection of the events for a period of time on June 1, 2014. Bartley stated that

he remembered lying down on his bunk after returning from the dining hall. The next thing he knew, Bartley said, his restraints were being removed in a segregation cell. He said that, earlier that day, he had no problem with his shoulder. He also said that when he was placed in segregation his shoulder was hurting. Bartley admitted that he learned what had occurred to him on June 1, 2014, only after talking to other inmates after he was released from segregation 15 months after June 1, 2014.

Bartley conceded that he never filed any informal complaint or grievance forms alleging that Walk or anyone else had assaulted him or injured his shoulder. He said that he could not file these forms because he was afraid of retaliation by correctional officers. He further conceded, however, that no one at Keen Mountain had ever assaulted him on any other occasion or retaliated against him in any way after filing this lawsuit. He offered no evidence that Walk or anyone else had ever threatened him in any way. Bartley also could not name any other inmate or any other occasion on which correctional officers had retaliated against someone for filing an informal complaint or grievance.

Bartley said that Keen Mountain inmates were required to request informal complaint and grievance forms from a correctional sergeant or higher-ranking officer. He said that he had requested a form from a correctional officer whose name he could not remember and that this officer told him he did not want to get involved and for Bartley to request the form from a sergeant. At another point in the hearing, Bartley said that he could not recall any particular officer or any particular occasion on which he had requested to receive an informal complaint or grievance form.

Bartley testified that sergeants and higher-ranking officers, including the warden and assistant warden, routinely made rounds through each building at Keen Mountain. Nonetheless, he admitted that he had never requested any complaint or grievance forms from these individuals and never reported the alleged assault or injury to any of these individuals.

Bartley testified that he did not seek medical care for his shoulder injury until July 4, 2014. He also testified that he purposefully lied to the medical care providers at Keen Mountain about how his shoulder had been injured because he feared retaliation. He said that he feared that, if he told medical personnel how he had been assaulted, they would tell correctional officers. Bartley admitted, however, that he had no reason to believe that this would occur.

*II. Analysis*

The Prison Litigation Reform Act of 1995, ("PLRA"), requires a prisoner to exhaust any available administrative remedies before challenging prison conditions in federal court. *See* 42 U.S.C.A. § 1997e(a) (West 2012). It provides as follows: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a). Exhaustion is mandatory under § 1997e(a), and courts have no discretion to waive the requirement. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "[F]ailure to exhaust is an affirmative defense under the PLRA" and, therefore, must be both pled and proven by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

A prisoner must exhaust administrative remedies even where the relief sought, such as monetary damages, cannot be granted by the administrative process. *See Woodford*, 548 U.S. at 85 (citing *Booth*, 532 U.S. at 734). The Supreme Court has instructed that the PLRA "requires proper exhaustion." *Woodford*, 548 U.S. at 93. Proper exhaustion of administrative remedies for PLRA purposes means using all steps that the agency holds out, and doing so properly, so that the agency addresses the issues on the merits. *See Woodford*, 548 U.S. at 90. Therefore, in order to satisfy the exhaustion requirement, the inmate must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his action to court. *See Woodford*, 548 U.S. at 90. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). "[W]hen prison officials prevent inmates from using the administrative process …, the process that exists on paper become unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Here, defendant Walk has asserted this affirmative defense, and the evidence from Bartley, himself, showed that he failed to exhaust his administrative remedies before filing this lawsuit. Bartley has admitted that he never pursued any administrative remedy before filing suit. He did not file an informal complaint. He did not file a grievance form. Bartley claimed that he did not do so because he was afraid that Walk or others might retaliate against him if he did. While threats and intimidation may make a prison's administrative remedies unavailable, *see Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016), Bartley has produced no evidence of any threats or acts of intimidation by the defendant or anyone else in an effort to discourage Bartley's use of the prison's grievance procedure. Based on this evidence, I find that there is no genuine dispute of material fact and that the court

should enter summary judgment in Walk's favor based on Bartley's failure to exhaust administrative remedies.

I also find that there is no genuine dispute of material fact showing that Walk or anyone else used excessive force on Bartley on June 1, 2014. While Bartley has made various written allegations against Walk in his Complaint and response to Walk's Motion, he admitted under oath that he has no personal knowledge of what happened to him on June 1, 2014. In particular, Bartley admitted that he remembered only that he returned to his cell from the dining hall and that he lay down on his bunk. The next thing Bartley remembers is that he was being unrestrained in a segregation cell. Bartley claims that he suffered a seizure and has no recollection of what occurred after he returned to his cell and before he was placed in segregation. He only knows what others have told him occurred.

Walk, on the other hand, has provided a sworn affidavit stating that no extraction team was used to restrain Bartley and that he, personally, did not use any excessive force against Bartley on June 1, 2014. Instead, according to Walk's affidavit, Walk found Bartley lying on the floor of his cell between the commode and sink. Walk gave Bartley three orders to stand up to be restrained. When Bartley did not respond, Walk notified the Medical Department and the Watch Commander, Captain Lee. Walk said that when Nurse Lester began assessing Bartley, Bartley slapped at her. Walk said he and Captain Lee then brought Bartley to his feet and placed restraints on him.

To create a genuine dispute of material fact, a party must present evidence that would be admissible at trial based on personal knowledge. *See* FED. R. CIV. P. 56(c)(2), (4). Bartley has created no genuine dispute of material fact as to his

allegation that Walk either assaulted him or allowed others to assault him. Therefore, I find that Walk is entitled to summary judgment in his favor on this basis as well.

## PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. The undisputed evidence shows that Bartley did not exhaust his administrative remedies prior to filing suit against Walk;
2. The undisputed evidence shows that neither Walk, nor anyone else, used excessive force against Bartley on June 1, 2014; and
3. The court should enter summary judgment in defendant Walk's favor.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court enter summary judge in defendant Walk's favor.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Elizabeth K. Dillon, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: August 25, 2017.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE